IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KRISTOPHER WELCH,

        Plaintiff,

v.                                                            Case No. 19-1057-JWB

BOARD OF COUNTY COMMISSIONERS OF
SEDGWICK COUNTY, KANSAS;
SHERIFF JEFF EASTER, *in his official capacity*; and
DETENTION SERGEANT ALEXANDER
(First Name Unknown), *in his individual and
official capacity*,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant Sedgwick County's[1] motion to dismiss the claims against it. (Doc. 12.) The motion is fully briefed and is ripe for decision. (Docs. 20, 21.) Sedgwick County's motion is GRANTED for the reasons stated herein.

**I. Facts**

The following facts are taken from the allegations in Plaintiff's complaint. Jeff Easter is the elected Sheriff of Sedgwick County, Kansas, and is responsible for the administration and of the policies and procedures of the Sedgwick County Adult Detention Facility ("the Jail"), including the supervision and training of its employees. (Doc. 1 at 2.) Sergeant Alexander was a Detention Deputy at the Jail at the relevant time. On March 13, 2017, while Plaintiff was a detainee in the Jail, Alexander ordered him to change bunks. Alexander did not allow Plaintiff sufficient

---

[1] Defendants Board of County Commissioners of Sedgwick County, Kansas, and Sheriff Jeff Easter, who is sued only in his official capacity as Sheriff of Sedgwick County, are referred to here collectively as "Sedgwick County." *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits … generally represent only another way of pleading an action against an entity of which an officer is an agent.") *See also* K.S.A. 19-105 (all suits against a county in Kansas shall be brought against the county's board of county commissioners).

time to comply, however, instead ordering him to "cuff up" and then slamming him against the cell wall.  After Plaintiff expressed his frustration, and while he was handcuffed and defenseless, Alexander allegedly "punched Plaintiff from behind in the left side of his face, fracturing multiple bones and causing Plaintiff to black out." (*Id*. at 4.)  Plaintiff alleges the force was unreasonable, excessive, and without any legitimate purpose.

Count One of the complaint asserts a claim against Defendant Alexander under 42 U.S.C. § 1983 for deprivation of the right to be free from cruel and unusual punishments. (*Id.* at 6.)  Count Two alleges a § 1983 claim against Sedgwick County for deprivation of the same right.  Among other things, Count Two alleges: that the excessive force used by Alexander "arose under circumstances that are not unusual in a detention setting … with which detention officers must deal"; that the unconstitutional force "was caused by Sedgwick County's … failure to properly or sufficiently train and supervise its detention deputies," a failure which "amounts to deliberate indifference … to the rights of persons [with] whom detention deputies must be in contact"; that the "improper, lack of, or insufficient training and supervision related … to: training of detention deputies to use only appropriate force, to recognize when detainees are in a defenseless position, and to ignore comments of frustration from detainees"; that the "need for more or different training and supervision of detention deputies is so obvious due to either Defendant Alexander's use of force in this case against a defenseless detainee or his deliberate indifference of such conditions and the resulting use of force and injury"; that the force used by Alexander was "caused by a failure of [Sedgwick County] to properly train, educate and supervise its detention deputies"; and that such failures amount to "deliberate indifference by [Sedgwick County] to the rights of persons with whom detention deputies come into contact … and such failures were authorized, ratified or tolerated by [Sedgwick County.]" (*Id.* at 7-8.)

Sedgwick County contends it is entitled to dismissal of Count Two pursuant to Fed. R. Civ. P 12(b)(6). Among other things,[2] it argues the complaint fails to state a claim under the failure-to-train theory recognized in *City of Canton v. Harris*, 489 U.S. 378 (1989). It argues the allegations are insufficient because Plaintiff does not state what training or supervision was provided by Sheriff Easter, fails to allege facts showing deliberate indifference on the part of Sedgwick County policymakers, and fails to show a causal link between the allegedly inadequate training and the constitutional deprivation. (Doc. 13 at 6.) In response, Plaintiff argues he has stated a plausible claim because although the allegations "rise from a single punching incident, … the nature and extent of the injuries caused by that incident call into question, in and of themselves, the training and supervision provided to Sergeant Alexander." (Doc. 20 at 3.) Moreover, he argues that Sergeant Alexander's answer to the complaint "implicitly argu[es] that his training … authorized him to use such violent force." (*Id.* at 4.)

**II. Standard for Motion to Dismiss**

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Rule 12(b)(6)

---

[2] The Sedgwick County Defendants argue they are entitled to qualified immunity (Doc. 13 at 2), but qualified immunity is not available to governmental entities. The Board of County Commissioners is sued here only as a political subdivision (Doc. 1 at 2), not as individuals, and Sheriff Easter is likewise sued only in his official capacity. (*Id.*) As such, Count Two is a claim against Sedgwick County, which cannot assert qualified immunity. *See Seifert v. Unified Gov't of Wyandotte Cty./Kansas City*, 779 F.3d 1141, 1159 (10th Cir. 2015) ("Only individuals, not governmental entities, can assert qualified immunity.")

"does not require that Plaintiff establish a prima facie case in her complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1171–72 (10th Cir. 2015) (internal citations omitted). In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff is entitled to offer evidence to support his claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

**III. Analysis**

A. <u>Municipal liability standards</u>. Section 1983 provides a remedy against any person who, acting under color of state law, deprives an individual of a right secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. A local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agent." *Waller v. City and Cty. of Denver*, ___F.3d___, 2019 WL 3543115, *3 (10th Cir. Aug. 5, 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[3] *Id.* (quoting *Monell,* 436 U.S. at 691). Rather, the government may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* (quoting *Monell*, 436 U.S. at 694.)

Accordingly, to establish municipal liability, a plaintiff must first demonstrate a municipal policy or custom, which may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these

---

[3] "Municipality" as used here refers to a county as well as a city. *Cf. Monell,* 436 U.S. at 690 (finding "municipalities and other local government units" are subject to § 1983 liability.)

policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.* (quoting *Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010)).

After demonstrating a municipal policy or custom, a plaintiff must demonstrate "a direct causal link between the policy or custom and the injury alleged." *Waller*, 2019 WL 3543115, at *4 (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). "The causation element is applied with special rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Id.* (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 777 (10th Cir. 2013)).

On claims of inadequate hiring, training, or supervision, a plaintiff must also "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* (quoting *Brown*, 520 U.S. at 407.) "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action, … as a less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities." *Id.* (citations and internal quotation marks omitted.) The standard may be satisfied "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). "In most instances, notice can be

5

established by proving the existence of a pattern of tortious conduct." *Id.* Absent a pattern of unconstitutional behavior, deliberate indifference may be found only "in a narrow range of circumstances" where "a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Id.* (quoting *Brown*, 520 U.S. at 409) (internal quotation marks omitted.)

B. Sufficiency of Plaintiff's Allegations. After reviewing the allegations in the complaint in light of the foregoing standards, the court concludes that the allegations fail to state a plausible claim for relief against Sedgwick County.

Plaintiff claims Sedgwick County provided "improper, lack of, or insufficient training and supervision related … to: training of detention deputies to use only appropriate force, to recognize when detainees are in a defenseless position, and to ignore comments of frustration from detainees…." (Doc. 1 at 7.) A municipality's culpability for a deprivation of rights "is at its most tenuous where a claim turns on a failure to train." *Waller*, 2019 WL 3543115, at *5 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). The instant complaint says nothing at all about the training or supervision that was provided to detention deputies prior to this incident. The allegation that Sedgwick County provided "improper, [a] lack of, or insufficient training" about using "only appropriate force" is sufficiently conclusory or vague that it fails to identify any concrete deficiency. In this day and age, it is implausible that officials operating a detention facility of any size would fail to provide *any* training about constitutional limits on the use of force, and the complaint does not allege that to be the case here. Rather, it generically claims the training was lacking or insufficient without actually identifying the deficiency. It refers to recognizing when "detainees are in a defenseless position," but fails to explain that assertion or how Sedgwick County's training on the use of force could have caused a deputy to conclude it was appropriate to

punch a handcuffed detainee in the face from behind. In the context of a *Monell* claim based on failure-to-train, Plaintiff's allegations are insufficient to plausibly state a claim. *Cf. Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (plaintiff "must identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury'") (citation omitted); *Schwers v. City of Albuquerque*, 2015 WL 13306196, *4 (D. N.M. Oct. 5, 2015) (allegation that city failed to provide "training on less-than-lethal force" failed to identify a specific deficiency). In this respect, the complaint fails to adequately identify a policy of failing to train deputies and fails to allege facts to show that the inadequate training, and not the conduct of an individual deputy, was the moving force behind the alleged violation. *See Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (plaintiff failed to state a plausible claim where he alleged no facts about the content of the excessive force training provided and merely asserted that insufficient training was "apparent" from the facts of the case.)

The complaint also fails to allege facts showing that Sedgwick County was deliberately indifferent to the consequences of the allegedly inadequate training. To show deliberate indifference on this type of claim, "a pattern of similar constitutional violations by untrained employees is ordinarily necessary," because without the notice provided by a pattern the county's decisionmakers "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (quoting *Connick*, 563 U.S. at 62) (internal quotations marks and punctuation omitted.) Plaintiff does not allege a pattern, but instead invokes the exception for the "narrow range of circumstances" in which the unconstitutional consequences of a failure to train are "highly predictable" and "patently obvious." *Waller*, 2019 WL 3543115, at *5 (citations omitted.) But the complaint fails to identify such circumstances. It is not "patently obvious" that excessive force of the type alleged is a highly predictable result of failing to

7

specifically explain to deputies it is not appropriate to punch detainees in the face when they are handcuffed or in retaliation for expressing frustration. *Waller*, 2019 WL 3543115, at *4 (specific or extensive training hardly seems necessary to put deputy sheriffs on notice "that they may not violently assault a restrained detainee who is not acting in a threatening manner.") Even assuming the truth of Plaintiff's allegations concerning the use of force by Sergeant Alexander, no facts are alleged in the complaint to show that the incident was in fact the product of a training deficiency rather than individual misconduct. *Id.* at *7 ("Even an untrained law enforcement officer should have been well aware that any use of force in this situation – where a restrained detainee was simply addressing a judge at a hearing in a polite, calm voice – was inappropriate. This case does not involve technical knowledge or ambiguous 'gray areas' in the law that would make it 'highly predictable'" that a deputy would need additional training to know how to handle the situation correctly); *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior.") Plaintiff has failed to allege facts showing that Sedgwick County was deliberately indifferent to the need for further training on the use of force.

The court finds Plaintiff's allegations that Sedgwick County "failed to properly supervise or sufficiently … supervise its detention deputies" (Doc. 1 at 7) suffers from the same deficiencies outlined above. These conclusory allegations fail to explain how the supervision provided by Sedgwick County was deficient, how it caused the alleged violation, and how Sedgwick County was deliberately indifferent to the consequences of deficient supervision. *See Canday v. Unif. Gov't of Wyandotte Cty./Kansas City, Kansas*, 68 F. App'x 165, 166 (10th Cir. 2003) (conclusory allegation that officers "did not have the proper training or supervision" failed to support claim). Finally, insofar as Plaintiff alleges that "such failures were authorized, ratified or tolerated by"

Sedgwick County, the allegations are similarly conclusory, with no supporting facts showing how Sedgwick County authorized or ratified the alleged violation. For all of the foregoing reasons, the complaint fails to state a valid claim for relief against Sedgwick County under § 1983.

Plaintiff's response asks that he be given leave to amend the complaint in the event the court finds the complaint is insufficient to state a claim. (Doc. 20 at 5.) Plaintiff has not attached a proposed amended complaint or suggested how he will cure the deficiencies indicated above. The court declines to grant the request for leave under these circumstances. Plaintiff is free to seek leave to amend the complaint in accordance with the local rules.

### IV. Conclusion

The motion to dismiss (Doc. 12) by Defendants Board of County Commissioners of Sedgwick County and Sheriff Jeff Easter is GRANTED. Count Two of the complaint is DISMISSED for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED this 3rd day of September, 2019.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE